| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | |
| **DISTRICT OF ARIZONA** | |
| In re ) | Chapter 7 Proceedings |
| Clifford R. Smith and ) Robyn Frances Smith, ) | Case No: 3:10-BK-19970-MCW |
| Debtors. ) | **MEMORANDUM AND ORDER ON MOTION TO COMPEL TURNOVER OF ESTATE PROPERTY** |

## I. INTRODUCTION

Before the Court is the motion of William E. Pierce, the Chapter 7 trustee ("Trustee"), to compel turnover of $88,979.37 in proceeds ("Proceeds") the Debtors received from the postpetition sale of their Arizona homestead ("Turnover Motion").[1] In the Turnover Motion, the Trustee argues that, since the Debtors sold their homestead and have failed to reinvest the Proceeds in a new Arizona homestead within Arizona's statutory reinvestment period, the homestead exemption they declared at the outset of the case has "lapsed" and the Proceeds have become property of the estate which the Trustee can administer. The Debtors filed an opposition ("Opposition") arguing that (a) the Court's order authorizing them to sell their homestead "free and clear of the estate" bars the Trustee from claiming an interest in the Proceeds; (b) the homestead exemption they claimed at the outset of the case protected their exemption in the Proceeds; and (c) even if the sale of the homestead triggered the requirement under Arizona law that those proceeds be reinvested within 18 months of the sale, the Debtors' purchase of a new home in Utah within that 18-month period satisfied the requirement. The Trustee filed a Reply to the Opposition. The Court heard oral argument on June 9, 2014, and took the matter under advisement. Subsequently, the Court issued an order directing the Trustee to file a declaration explaining why he has not closed this 4 year-old case, and directing

---

[1] While this case is assigned to the Honorable Madeleine C. Wanslee, oral argument on the Turnover Motion was heard by Judge Daniel P. Collins, therefore this decision is rendered by Judge Collins.

1 the Debtors to file a declaration detailing their use of the Proceeds. Based on the
2 papers, arguments, and the record before it, the Court partially grants the Trustee's
3 Turnover Motion.

**II. BACKGROUND**

The facts presented by the parties are not in dispute. The docket reflects the following events leading up to the instant Turnover Motion, which events the Court sets out in some detail in view of certain issues raised by the Debtors:

- The Debtors filed their Chapter 7 petition on June 25, 2010 ("Petition Date"). Along with the petition, the Debtors filed all schedules, including Schedule A listing their residence located at 9205 E. Mountain View Road, Prescott Valley, AZ ("Property"), and Schedule C claiming the Property exempt in the amount of $70,279.00 ("Exemption") pursuant to A.R.S. § 33-1101(A).[2] The schedules have not been amended.

- The first meeting of creditors required under 11 U.S.C. § 341(a)[3] was held July 23, 2010.

- No objection to the Exemption (or any other exemption) was filed.

- The Debtors received their discharge on September 28, 2010.

- On July 25, 2012, just over 2 years from the Petition Date, the Debtors filed a Motion To Sell Property Free And Clear Of The Estate And Pay Off Mortgage ("Sale Motion"). The Sale Motion indicated the Debtors were under contract to sell the Property for $280,000.00, with a closing set for August 30, 2012. The Sale Motion also stated that, "Any equity that the debtors realize from the sale of the home will be protected by the debtors' homestead exemption. A.R.S. §33-1101(A). Thus, the debtors

---

[2] This amount appears to have been calculated by subtracting the scheduled deed of trust balance encumbering the Property, $179,721.00, from the scheduled value of the Property, $250,000.00.
[3] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11, United States Code.

should be permitted to sell the Property free and clear of the bankruptcy estate." No opposition to the Sale Motion was filed. The Sale Motion was heard July 31, 2012. The Honorable Redfield T. Baum's minute entry from the sale hearing reflects that only Debtors' counsel attended and stated: "It is confirmed that the trustee was noticed." The Sale Motion was granted by Judge Baum's order entered August 1, 2012 ("Sale Order"). The sale closed on August 30, 2012 ("Sale").[4]

- On March 8, 2013, the Debtors filed a Motion To Determine That Proceeds From Post-Petition Sale Of Debtors' Homestead Are Not Property Of The Estate Under A.R.S. § 33-1101(C) ("Motion To Determine"). In that Motion, the Debtors reported the result of the sale of the Property and stated,

> In subsequent communications with the Chapter 7 Trustee, undersigned counsel has been advised that the Trustee intends to make a claim for the proceeds from the sale of the Property pursuant to A.R.S. §33-1101(C) . . . The Trustee asserts that the proceeds from the post-petition sale of the Debtors' homestead may become property of the estate unless the Debtors use that money to purchase a new residence before the expiration of eighteen months.

The Motion To Determine essentially makes the same arguments the Debtors make in their opposition to the instant Turnover Motion.

- On March 22, 2013, the Trustee filed an Objection to the Motion To Determine, essentially stating the same arguments which the Trustee made in his Turnover Motion. In his Objection, the Trustee stated: "Unless the debtors reinvest this money in another homestead with[in] 18 months after the sale, the exemption in the proceeds will terminate and the money must be turned over to the trustee."

- The docket does not reflect any further events in connection with the Motion To Determine. Although this was the type of motion that requires a hearing

---

[4] This date is only referenced by the Trustee in his Reply and in his oral argument. In their papers and oral argument, the Debtors do not state a specific closing date. As the August 30, 2012 date has not been disputed by the Debtors, the Court finds that it is the date the Property was sold.

1 pursuant to LBR 9013-1(k), the docket does not indicate that any hearing on the Motion
2 was set or that any notice of hearing was filed or served by the Debtors pursuant to
3 LBR 9013-1(j).[5]

- The Trustee filed his Turnover Motion on May 16, 2014. The next most recent affirmative filing by the Trustee in this case was his Motion For Examination Pursuant To Bankruptcy Rule 2004 filed on June 4, 2011, almost three years prior to the Turnover Motion.

## III. ISSUES PRESENTED

The issues raised by the parties are as follows:

1. Where the Debtors have exempted their homestead under A.R.S. § 33-1101(A), does a voluntary, postpetition sale of the homestead, after the deadline for objecting to the exemption has passed but while the bankruptcy case is still open, subject the exemption to the conditions of A.R.S. § 33-1101(C)?

2. Does the Court's Sale Order preclude the Trustee from pursuing turnover of the Proceeds?

3. Does the Debtors' purchase of a new homestead in another jurisdiction within 18 months of the Sale qualify to continue the exemption in the Proceeds under A.R.S. § 33-1101(C)?

4. What uses of homestead sale proceeds are permitted in "establish[ing] a new homestead" within the meaning of A.R.S. § 33-1101(C)?

5. Do the equities of this case require that the Turnover Motion be denied?

## IV. DISCUSSION

In this case, the Court wades into an area well-known to the 9th Circuit:

---

[5] LBR 9013-1(j) provides:
For any motion that requires a hearing, it shall be the responsibility of the moving party to obtain from the court the date, time and location of the hearing and to provide notice thereof to all interested parties . . . "

> The bankruptcy status of the Arizona 18–month temporary homestead sale proceeds exemption is a festering sore. We wrestle with ARIZ.REV.STAT. § 33–1101(C) for the third time in two years. Our *Smith* and *Konnoff* decisions validated the estate's interest in such proceeds, emboldened trustees, and prompted two bankruptcy court published opinions.

*In re White*, 389 B.R. 693 (9th Cir. BAP 2008). Some clarification has been provided in the more recent decision of the 9th Circuit in *In re Jacobson*, 676 F.3d 1193 (9th Cir. 2012), but the instant case demonstrates that the sore still festers.

We start, as always, with the statutes governing this dispute.

**A. The Statutes**

The Trustee does not cite his authority under the Bankruptcy Code for seeking turnover of the Proceeds, but § 542(a) appears to be the source of that authority. That subsection provides as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

A key requirement of this provision, and key to the first issue presented, is that property subject to turnover must be "property that the trustee may use, sell or lease under section 363." Section 363 confers such powers on the trustee only as to "property of the estate." *See* § 363(b)(1) and (c)(1). Section 522 entitles individual debtors to exempt certain property from property of the estate. In Arizona, the exemptions to which bankruptcy debtors are entitled are those created under Arizona law. A.R.S. § 33-1133.

Debtors' Schedule C filed in this case lists the Property as exempt pursuant to A.R.S. §33-1101(A), which provides in pertinent part as follows:

> **A.** Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred fifty thousand dollars in value, any one of the following:
> 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides . . . .

The Trustee cites A.R.S. § 33-1101(C) for the proposition that the Sale Proceeds are no longer exempt from property of the estate. That subsection provides as follows:

> **C**. The homestead exemption, not exceeding the value provided for in subsection A, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

### B. The Trustee's Position

The Trustee relies on *In re Jacobson*, 676 F.3d 1193 (9th Cir. 2012) as precedent requiring this Court to order turnover of the Proceeds. In *Jacobson*, the debtor claimed her homestead as exempt at the commencement of her California bankruptcy case. California's homestead exemption scheme does not prevent the involuntary sale of a homestead if there is sufficient equity above all liens and encumbrances to satisfy the statutory exemption amount. *Jacobson*, 676 F.3d at 1198. In *Jacobson*, the bankruptcy court lifted the stay and permitted a judgment creditor to force a sale of the homestead, after which the debtor and her husband received their statutory exemptions totaling $150,000 from the sale proceeds. They did not reinvest those proceeds in a new homestead within the 6-month reinvestment period provided under California's statutory homestead exemption scheme. The bankruptcy court ruled against the trustee

on his complaint for turnover of the proceeds. The Bankruptcy Appellate Panel affirmed. The 9th Circuit Court of Appeals reversed. Its decision noted the basis for the bankruptcy court's ruling:

> The bankruptcy court reasoned that bankruptcy exemptions are fixed at the time of the bankruptcy petition and cannot be changed by postpetition events. The bankruptcy court viewed the homestead exemption as covering the Kensington property itself and concluded that post-petition conversion of the Kensington property into sale proceeds could not change its exempt status.

676 F.3d at 1197-1198. In rejecting that view, the 9th Circuit reasoned as follows:

> Under the so-called ''snapshot'' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition. *See White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924). Those exemptions must be determined in accordance with the state law ''applicable on the date of filing.'' 11 U.S.C. § 522(b)(3)(A). And ''it is the *entire* state law applicable on the filing date that is determinative'' of whether an exemption applies. *In re Zibman*, 268 F.3d 298, 304 (5th Cir.2001) (emphasis in original). In this case, the entire state law includes a reinvestment requirement for the debtor's share of the homestead sale proceeds. [ ]
> . . .
> . . . [W]e analyze the California homestead exemption in terms of the exact scope of the rights it confers at the time of the bankruptcy petition. In *In re Golden,* 789 F.2d 698 (9th Cir.1986), the debtor had filed for bankruptcy after selling his California homestead and had then let the reinvestment period lapse without investing his exempt share of the proceeds. *Id.* at 699. The debtor argued the proceeds were nonetheless exempt because they had been exempt when he filed for bankruptcy. *Id.* at 700. We rejected that argument and held the debtor had received the proceeds subject to the reinvestment condition. *Id.* Those proceeds could thus lose their exempt status once the reinvestment period lapsed. *Id.*
>
> There is no material difference between *Golden* and this case. The homestead exemption gave the Jacobsons

> clearly defined rights with respect to the Kensington property. The Jacobsons had a right to $150,000 in proceeds. That right was contingent on their reinvesting the proceeds in a new homestead within six months of receipt. The Jacobsons did not abide by that condition and thus forfeited the exemption.
>
> The Jacobsons argue *Golden* is inapposite because Myrna filed for bankruptcy before the homestead was sold and thus claimed an exemption in the Kensington property, not the proceeds. We reject the argument. The homestead exemption merely gave the Jacobsons a conditional right to a portion of the proceeds from the sale of the Kensington property. There was no exemption in the Kensington property itself. To the contrary, the exemption explicitly allowed Cunningham to force a judicial sale of the Kensington property. [ ] The Jacobsons could thus expect no more than $150,000 in proceeds that were subject to a reinvestment requirement.

*Jacobson*, 676 F.3d at 1199-1200 (statutory citations omitted).

While *Jacobson* involved California homestead law, this Court finds that Arizona's homestead law is indistinguishable from the provisions that governed the *Jacobson* decision. *See also In re Smith*, 342 B.R. 801, 805 (9th Cir. BAP 2006) ("Debtors argue that . . . unlike the homestead provisions of California . . . , Arizona does not require that the sale proceeds be reinvested into another homestead. According to Debtors, under Arizona law, there is no clear language conditioning the allowance of the exemption on a requirement to be met over a period of time. We disagree."). *Jacobson* instructs this Court to include the reinvestment requirement under A.R.S. §33-1101(C) in determining whether the Debtors' claimed exemption under A.R.S. §33-1101(A) continues in the Proceeds, notwithstanding that the original exemption was never challenged.

Applying the provisions of A.R.S. §33-1101(C) to this case, the Debtors were required to reinvest the Proceeds within 18 months of August 30, 2012, i.e., by

February 27, 2014[6], in order to preserve their exemption. The Debtors purchased a home in Utah on June 7, 2013[7], well within the 18-month reinvestment period. Nevertheless, the Trustee asserts that a Utah homestead does not qualify for the Arizona homestead exemption, quoting language of A.R.S. §33-1101(A). However, having sold their Arizona homestead, the question is no longer whether the Debtors are entitled to an exemption under A.R.S. §33-1101(A), but whether, after sale of their Arizona homestead, their exemption continues in the Proceeds under A.R.S. §33-1101(C). The Court acknowledges the plain language of A.R.S. §33-1101(A), limiting the exemption to a person "who resides within the state," but A.R.S. §33-1101(C) does not contain that limitation and is silent as to where the new homestead must be established with the homestead sale proceeds. The fact that this limitation is expressed in A.R.S. §33-1101(A) but absent in A.R.S. §33-1101(C) evidences the Arizona Legislature's intent that there *not* be such a limitation on a qualified reinvestment of proceeds. The Court declines to write that limitation into A.R.S. §33-1101(C). Besides the unwarranted judicial legislation that would represent, in this day and age of easy mobility across state lines, imposing the requirement advanced by the Trustee would fly in the face of comity and the fresh start goal of the Bankruptcy Code.

Next the Trustee contends the Debtors did not use all of the Proceeds to establish a new homestead. The Trustee argues that only the earnest money and down payment paid by the Debtors at the closing on their purchase of the Utah home represent proceeds reinvested in a homestead.

In *In re White*, 377 B.R. 633 (Bankr. Ariz. 2007), *aff'd*, 389 B.R. 693 (9th Cir. BAP 2008), the court examined permissible uses of homestead sale proceeds. In *White*,

---

[6] Assuming, without deciding, that the 18-month reinvestment period is counted from August 30, 2012 - the next-to-last day of August 2012 - to the next-to-last day of the 18th month thereafter, February 27, 2014.

[7] This date only appears in the Trustee's Reply and in the settlement statement ("Settlement Statement") attached to the Reply. The Debtors have not disputed its accuracy.

Judge Curley granted a turnover motion concerning proceeds of the debtor's prepetition sale of his homestead where the debtor had "placed the vast majority of his funds into a brokerage account from which he purchased, sold, or obtained a number of investments that were contrary to an intent to reinvest in a new homestead or any exempt property." 377 B.R. at 645. In affirming Judge Curley's order, the 9th Circuit B.A.P. noted that Arizona authority is sparse on the question of what uses of homestead sale proceeds are permissible during the period of exemption, but predicted that the Arizona Supreme Court would not permit use of sale proceeds "in a manner inconsistent with Arizona's exempt purposes." 389 B.R. at 703-704. The Panel gleaned those purposes from Arizona Supreme Court case law, describing them as "preserv[ing] funds to provide shelter for the family" and allowing the owner of a homestead "to substitute one family home for another." *Id.* (citations omitted).

This Court finds it appropriate to consider the Debtors' reasonable expenditures to find and acquire their new home in Utah, to prepare it for occupancy, and to relocate there, as being within the meaning and spirit of "establish[ing] a new homestead" under A.R.S. §33-1101(C). Those expenditures are itemized in the Debtors' declaration which identifies moving expenses totaling $2,395.75, interim housing rent for 13 months totaling $13,200.00, the cash paid by the Debtors at the closing on their purchase of the new homestead totaling $30,782.15[8], and repairs, improvements, landscaping and appliances for the new homestead totaling $20,062.69[9], for a grand total of $66,440.59. The Court finds that the foregoing expenditures were reasonable and qualify as a timely reinvestment of the Proceeds. The Court finds that the balance

---

[8] This figure is calculated by subtracting the amount the Debtors borrowed to purchase the new homestead, $183,658.00, from the gross amount paid by the Debtors for the purchase, $214,440.15, according to the Settlement Statement.

[9] The receipts provided for this category of expenditures in the Debtors' Declaration, Exhibit F, include several for purchases consisting primarily of personal care items such as bedding, health and beauty products, and food and beverages, totaling $745.74. The Court does not find these purchases to be within the meaning of expenses associated with establishing a new homestead.

of the Proceeds were used for purposes that do not qualify as expenditures made to establish a new homestead. Subtracting the qualified expenditures from the gross amount of the Proceeds, the amount as to which the homestead exemption lapsed under A.R.S. § 33-1101(C) and that is subject to turnover is $22,538.78.[10]

**C. The Debtors' Position**

The Debtors make two arguments in support of their position that the Turnover Motion should be denied.

**1. Estoppel**

First, the Debtors argue that the Sale Order extinguished any claim of the estate and precludes the Trustee from now claiming the estate has an interest in the Sale Proceeds. The Debtors reason that ordinarily a debtor would not be required to obtain court approval of a sale of their homestead two years after the entry of discharge, but here they were obliged to do so because the Trustee had not yet closed the case, and the fact that the case remained open was not the fault of the Debtors. The Court views this argument as one of estoppel arising from the entry of the Sale Order, and also arising from the Trustee not having closed the case by the time of the Sale for reasons that were not the fault of the Debtors.

In *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808 (2001), the Supreme Court discussed the doctrines of claim and issue preclusion, as well as judicial estoppel:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue

---

[10] The largest of the unqualified expenditures is $14,471.25 used to pay off the balance owed on a 2011 Ford Escape, a vehicle different from the 2002 Ford TSS which was scheduled and exempted in the amount of $1,850 at the outset of this case.

> arises on the same or a different claim. . . . [J]udicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. . . . Because the rule is intended to prevent "improper use of judicial machinery," judicial estoppel "is an equitable doctrine invoked by a court at its discretion."

532 U.S. at 748-749; 121 S.Ct. at 1814 (citations omitted).

The Court finds the effect of the Sale Order is unclear. The Sale Motion does not cite any authority under the Bankruptcy Code for the relief requested, so the effect of the Sale Order cannot be determined with reference to any specific statutory provision. The "'free and clear" language of the Sale Motion and the Sale Order is found in § 363(f) of the Code but the powers of sale free and clear of interests under that provision are conferred on a trustee, not a Chapter 7 debtor. Moreover, a sale authorized under that subsection "may be free and clear of any interest in such property of an entity *other than the estate*" (emphasis added) – the exact opposite of what is stated in the Sale Order. The Court is aware of the common reality that the title company upon which a buyer depends for title insurance, or perhaps the lender the Debtors sought to pay off with the sale proceeds, might have demanded this form of 'comfort order' from the Court. However, the Court is unwilling to endow the Sale Order with the effect of estoppel against the Trustee, or to find that the Sale Order cut off the rights and interests the Trustee is asserting in his Turnover Motion.

### 2. Equities of the case

Next, the Debtors argue that, "Allowing the Trustee to claim the proceeds from the post-petition sale of the Debtors' homestead under these circumstances would be fundamentally unfair and would frustrate the Bankruptcy Code's goal of giving debtors a fresh start." The Debtors describe "these circumstances" by way of attempting to

distinguish this case from *Jacobson*. Their points of distinction, and the Court's views on these points, are as follows:

  (a) The Debtors argue that, unlike the debtor in *Jacobson*, the Debtors have not engaged in fraudulent activity. The Court does not see that this point had any bearing on the decision in *Jacobson*, and the Debtors have not directed the Court's attention to any part of the *Jacobson* opinion that makes a connection between that debtor's fraudulent activity and the court's decision. Myrna Jacobson's fraudulent activity and denial of discharge are mentioned in the Court's recitation of the background, but not in the analysis or reasoning for the decision on the exemption issue.

  (b) The Debtors next contend that, unlike *Jacobson*, where the debtor's homestead was sold by forced sale shortly after the commencement of the case and after lifting the stay, the Debtors before this Court sold their home over two years after the commencement of the case, on their own motion, and under an order that approved the sale free and clear of the bankruptcy estate. As previously discussed, the Court does not find that the Sale Order resolves the Turnover Motion. Moreover, the Court does not view the distinction between a forced or voluntary sale as being relevant. A.R.S. §33-1101(C) specifically states that it applies to "the voluntary or involuntary sale of the property."

  (c) Finally, the Debtors argue that the *Jacobson* court was not faced with a bankruptcy case that "languished" on the docket for years through no fault of the Debtor. The Court is concerned about this aspect of the case and views the Debtors' argument as a laches defense. In determining whether the equitable doctrine of laches may be used as a defense in a dischargeability action, the 9th Circuit stated,

> Our analysis begins with a recognition of two fundamental tenets of bankruptcy law. The first is the "long[-

> ]recognized" principle that "a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period[.]' " *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (citation omitted). The second is the understanding that a bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be "inconsistent" with the Bankruptcy Code. *In re Myrvang,* 232 F.3d 1116, 1124 (9th Cir.2000) (citing *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940)); *see also Katchen,* 382 U.S. at 327, 86 S.Ct. 467 (noting bankruptcy courts "are essentially courts of equity"). These two principles combine to create a presumption that the equitable doctrine of laches, which has as its goal *the prevention of prejudicial delay* in the bringing of a proceeding, is a relevant and necessary doctrine in the bankruptcy context.

*In re Beaty*, 306 F.3d 914, 922 (9th Cir. 2002) (emphasis added). While the 9th Circuit reached this conclusion in the context of a dischargeability action, this Court finds *Beaty* to be instructive in the instant matter.

"The affirmative defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *In re Beaty,* 306 F.3d at 926 (citations omitted). The Bankruptcy Code speaks to the diligence required of a Chapter 7 trustee. Under § 704(a), "The trustee shall – (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest".

Here, the Debtors claim this case has "languished" on the docket. The docket reflects no affirmative action on the part of the Trustee in the nearly three years leading up to the Turnover Motion. However, this Court is aware that often a Chapter 7 trustee's efforts take place off-docket. The Trustee's declaration filed in this matter reveals that the reasons he did not close this estate long ago are wholly unrelated to the

1 homestead issues before the Court.  In light of the Trustee's declaration, the Court does
2 not find that the Trustee has failed to proceed diligently in this case or that the Turnover
3 Motion was unduly delayed.  While the Trustee filed the Turnover Motion one year
4 after the Debtors purchased their Utah home, it was filed only about six weeks after
5 expiration of the 18-month reinvestment period.

Even if the timing of the Turnover Motion was "delay", for a laches defense to succeed the delay must also have been prejudicial. *In re Beaty,* 306 F.3d at 926.  On this point, the Court notes that the Debtors brought their Motion To Determine on March 8, 2013, over six months after the Sale of the Property and three months before they bought their new home in Utah.  In the Motion To Determine, the Debtors acknowledged being aware of the Trustee's position that the Sale Proceeds had to be reinvested within 18 months of the Sale in order to maintain the exemption.  The Trustee reiterated his position in his Objection to that Motion.  Nevertheless, the Debtors did not bring the issue to a head by requesting a hearing or by bringing a motion to compel the Trustee to abandon the estate's interest in the Proceeds.  The Court will not conclude that any delay occasioned by the Trustee or lack of diligence by the Trustee following the Debtors' filing of the Sale Motion was prejudicial to the Debtors.  The Debtors passed up the opportunity at that time to resolve the very issues that are now before the Court.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds that the Proceeds from the sale of the Debtors' exempt Arizona homestead remain exempt to the extent that the Proceeds were utilized to find and acquire their new home in Utah, to prepare it for occupancy, and to relocate there. However, $22,538.78 of the Arizona homestead sale

1 Proceeds were not so utilized by the Debtors within Arizona's 18-month reinvestment
2 period. This sum must be turned over to the Trustee by the Debtors.
3 **So ordered.**
4 Dated: August 26, 2014.

*/s/ Daniel P. Collins*

DANIEL P. COLLINS
CHIEF UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed by the BNC
and/or sent by auto-generated mail to
interested parties.